NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                       :
TQM CONSTRUCTION CO.,                  :
                                       :
              Petitioner,              :
       v.                              :    CIVIL ACTION NO. 11-831 (JLL)
                                       :
                                       :    OPINION
NEW JERSEY BUILDING                    :
CONSTRUCTION LABORERS DISTRICT         :
COUNCIL, LOCAL 394                     :
                                       :
              Respondent.              :
_____ :

**LINARES**, District Judge.

Currently before the Court is Petitioner TQM Construction Co.'s ("TQM") petition to vacate an arbitration award issued by Bernard Suskewicz dated December 17, 2010, and Respondent New Jersey Building Laborers District Council, Local 394's ("Union" or "Local 394") cross-motion to confirm the arbitration award. The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Petitioner's motion to vacate the arbitration award and grants Respondent's motion to confirm Arbitrator Suskewicz's December 17, 2010 award.

**I.      BACKGROUND**

In or around Summer 2010, TQM was awarded a contract by the Elizabeth Board of Education to perform general contracting work at Roosevelt School in Elizabeth, New Jersey (the "Elizabeth Job"). Brief in Support of Petitioner's Motion to Vacate And/Or Limit the Arbitration

Award ("Pet. Brief") at 1. In connection with the Elizabeth Job, TQM hired various subcontractors prior to commencing work. Id. On or about July 28, 2010, construction began on the Elizabeth Job. On that date, Alfred Castagna ("Castagna") a business manager from Local 394 contacted TQM's president, Bill DeVre, to see if TQM would hire union workers. Devre informed Castagna that the Elizabeth Job was not a significant project, but that he would be willing to hire a single Local 394 worker in a limited capacity for the Elizabeth Job. Pet. Brief at 1.

On or about July 28, 2010, DeVre executed a Short Form Agreement, which incorporated the Collective Bargaining Agreement — entitled the 2007-12 Building, Site and General Construction Agreement (the "CBA") — in full. See Short Form Agreement at Pet. Brief, Ex. A ("The undersigned Employer and Unions hereby agree to be bound by the terms and conditions set forth in the 2007-12 Building Site and General Construction Agreement, which agreement is incorporated herein as if set forth in the full."). Petitioner contends that DeVre only signed the agreement because Castagna represented that it was necessary to get the worker paid. Pet. Brief at 1. Further, Petitioner alleges that the CBA was not provided with the Short Form agreement, nor did it ever receive a copy, despite repeated requests, until this matter was submitted to arbitration. Pet. Brief at 2. Article 7.10(a) of the CBA provides in relevant part:

> On every job where laborers are employed by an Employer bound by this Agreement, there shall be a laborer Job Steward who shall be a member of the territorial local union where the job is located and who shall be competent in the work to be performed . . . The Job Steward Shall be the first laborer hired and the last laborer to be laid off. No laborer shall be permitted to work without a Job Steward on the job. The Job Steward shall not be discharged except for just cause and upon twenty-four hours prior written notice to the business manager.

See CBA, Cross- Motion to Confirm Arbitration Award and in Opposition to Plaintiff's Motion

to Vacate ("Resp. Brief"), Ex. A.

James Collins ("Collins") was assigned to the Elizabeth Job by Castagna. Pet. Brief at 2. Collins worked on July 28, 2010, August 2, 2010, August 3, 2010 and August 9, 2010. Pet. Brief at 2. On or about August 2, 2010, a dispute arose at the jobsite whereby DeVre complained about the sufficiency of Collins' work. Id. Accordingly, on or about August 3, 2010, Castagna, DeVre and Collins met at the jobsite. Id. At that time it was agreed between Castagna and DeVre that Collins' work would be limited to: (1) fixing a plastic partition; (2) cleaning concrete in the bathroom area; and (3) digging a single hole in the ground. Id. Collins worked on these tasks on August 3 and August 9, 2010. Collins was paid for a full days work on July 28, August 2, August, 3, and August 9, 2010. Id.

Pursuant to the terms of the CBA, TQM was noticed on November 15, 2010 of arbitration of a claim alleging that Petitioner had failed to use Union labor for cleanup work and for the remaining performance of the CBA-covered work at the Elizabeth Job without a Job Steward present on site. Resp. Brief at 3-4. On December 18, 2010, Arbitrator Suskewicz convened a hearing which afforded both "Union and Employer a full and complete opportunity to make opening statements, to present and offer relevant evidence, to examine witnesses and to argue in support of their respective positions." See Suskewicz Opinion, Resp. Brief, Ex. C. At the conclusion of the record, in addition to the facts listed above herein, the arbitrator propounded the following facts:

- Petitioner asserted that there was no work due the Union under the CBA on the job site from August 3 to August 9, 2010, and following August 9 to the project's completion.
- Collins and DeVre disagreed on whether Collins had been discharged on August

        3. The arbitrator found Collins' testimony to be "implausible" given his August 9, 2010 return to the job site. Collins was paid for his August 9, 2010 work.

- Petitioner's contention that there was no Union work on the site, and thus no obligation to employ a job steward, from August 3 to August 9, 2010 and following August 9, was disputed by testimony from Union witnesses and DeVre.
- Union witnesses testified that work due the Union under the CBA was ongoing during the above times. Specifically, Union witnesses saw work performed during a period spanning the entire month of August, which included demolition, material preparation, cleanup work, site preparation and mixing, handling, conveying, wheeling, spreading and pouring of concrete.
- Petitioner testified that it entered into subcontracts with craft employees such as carpenters and painters at times performed work within the Union's jurisdiction. Petitioner did not dispute that some of this work occurred on Saturdays and during evenings.
- Employer acknowledged that its President and his wife performed some work at the project that fell within the Union's work jurisdiction and that it failed to require sub-contractors to use laborers represented by the Union to perform cleanup and other work that fell under the Union's jurisdiction.

Suskewicz Opinion, at 4-7.

## II.  LEGAL STANDARD

Petitioner bears the burden of proving that the arbitration award at issue should be vacated. Handley v. Chase Bank, 387 Fed. Appx. 166, 168 (3d Cir. 2010) (citing Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)) ("The party seeking to overturn an award bears a heaving burden as these are 'exceedingly narrow circumstances.'"). This Court may not vacate an arbitration award merely because it views the merits of the claims differently or because the Court feels that the arbitrator made a factual or legal error. See e.g., Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004).

Instead, arbitration awards are entitled to a strong presumption of correctness, which can only be overcome in extremely narrow circumstances.

Section 10(a) of the Federal Arbitration Act ("FAA") provides that a Court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrator;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

In addition to the above-referenced bases for vacating an arbitration award, the Third Circuit has recognized certain common law grounds for vacating an arbitration award. First, vacatur is permitted if the award is completely irrational. See e.g., Mutural Fire, Marine, & Inland Ins. Co. v. Norad Reinsurance Co. Ltd., 868 F.2d 52, 56 (3d Cir. 1989). In order to vacate an arbitration award on such grounds, there must be absolutely nothing in the record to justify the arbitrator's decision. See e.g. News America Publications, Inc. Daily Racing Form Division v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990   Second, an arbitrator's manifest disregard for the law is sufficient to vacate an arbitration award. See e.g., Tanoma Min. Co., Inc. v. Local Union 1269, United Mine Workers of America,, 896 F.2d 745, 749 (3d Cir. 1990). Manifest disregard for the law involves something more than a legal error — the arbitrator must have been "'fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" Westa Constr., Inc. v,. United States Fid. & Guar Co.,

2007 WL 1031438 at *2 (M.D. Pa. Mar. 29, 2007) (quoting Black Box Corp. v. Markham, 2005 WL 546649 at *2 (3d Cir. Mar. 29, 2005)).

Lastly, arbitration awards may be vacated if they violate clearly defined and dominant public policy as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 62-63 (2000); see also, Arco Enters. v. Operative Plasterers' & Cement Masons Int'l Ass'n, Local No. 31, 124 Fed. Appx. 710, 2005 WL 256342 at *2 (3d Cir. Feb. 3, 2005) (indicating that arbitration awards may be vacated when such conflict with public policy).

### III. ANALYSIS

In its petition to vacate, TQM alleges that:

(1) Arbitrator Suskewicz acted in a manner by which the rights of TQM were prejudiced and TQM was deprived of a fundamentally fair hearing;
(2) Arbitrator Suskewicz acted with evident impartiality in favor of the Union and against TQM;
(3) Arbitrator Suskewicz acted in an arbitrary and capricious manner; and
(4) Arbitrator Suskewicz exceeded his powers by virtue of the fact that he rendered an opinion as to the enforceability of the "Building, Site and General Construction Agreement" on a going forward basis, when the scope of the arbitration was specifically limited to resolving the parties' dispute over the Elizabeth Job.

Verified Petition to Vacate And/Or Limit The Arbitration Award (the "Petition"), ¶¶ 28-39.  The Court first considers whether the Arbitrator acted in a manner which prejudiced TQM's rights and deprived them of a fundamentally fair hearing.

TQM contends that the Arbitrator acted prejudicially because the undisputed record demonstrates that Castagna and DeVre agreed that Collins' work would be limited to three

specific tasks and Collins was paid for the days he spent completing those tasks — July 28, August 2, August 3, and August 9, 2010. Nevertheless, the Arbitrator awarded two weeks of pay, benefits, and overtime to Collins. Further, TQM maintains that although the Arbitrator observed that Collins had testified untruthfully, the Arbitrator continued to rely on Collins' testimony to make the determination that non-union workers continued to work at the Elizabeth Job in the days following those during which Collins was employed. Petitioner contends that, "[a]gainst this backdrop, it is clear that the Arbitrator acted in a manner which demonstrated evident [partiality] and deprived TQM of a fundamentally fair hearing."[1]  Pet. Brief at 6.

In spite of these arguments, the Court refuses to vacate the arbitration award on this basis. Petitioner alleges that the Arbitrator's findings are inconsistent with his ultimate award, but Petitioner fails to highlight that the Arbitrator wrote:

> Based on the above and the record as a whole, **noting that the Employer acknowledges that its President and his wife performed some work at the project which falls within the Union's jurisdiction** and that it failed to require its subcontractors to use laborers represented by the Union to perform cleanup and other work which falls under the Union's jurisdiction, I find that the Employer violated its collective bargaining agreement by failing to preserve work opportunities and disregarding work jurisdiction of employees covered by its collective bargaining agreement.

Suskewicz Opinion at 7 (emphasis added). As stated, in order to vacate an arbitration award, there must be absolutely nothing on the record to justify the arbitrator's decision. See e.g., News America Publications, 918 F.2d at 24. In this case, the Arbitrator explicitly states that he relied on the testimony of the Employer's President and the CBA in order to make his determination.

---

[1] Although Petitioner's brief states that the Arbitrator acted with "impartiality," in light of its motion, this Court will infer that the Petitioner intended to convey that the Arbitrator acted with "partiality."

Without question, such facts are sufficient to justify an arbitrator's decision.

Further, Petitioner does not allege any potential source of arbitrator bias. In those cases where Courts have vacated an arbitration award on the basis of prejudice, Petitioner has been required to allege the potential source of the arbitrator's prejudice. See e.g., Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 147 (1968) (vacating an arbitration award due to the arbitrator's failure to disclose his close financial relationship with the prevailing party). To justify overturning an arbitration award, Petitioner must prove circumstances "powerfully suggestive of bias." Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 681-82 (7th Cir. 1982). "Evident Partiality" is "strong language" and requires appropriate proof to establish. Kaplan v. First Options Chicago Inc., 19 F.3d 1503 (3d Cir. 1994).

In this case, Petitioner does not allege that Arbitrator Suskewicz has had an prior dealings or relationship with the Union that would induce him to make findings in favor of Respondent, nor does TQM allege fraud. According to Petitioner, the only evidence of impartiality is the arbitrator's ruling. In fact, petitioner concedes that the Arbitrator considered all of the facts that TQM placed in contention. Accordingly, Petitioner's arguments are insufficient to justify vacating the arbitration award.

Petitioner contends that "the conclusions reached by the Arbitrator[,] when weighed against the record evidence[,] demonstrates without question that in awarding two weeks of pay, benefits and overtime that the Arbitrator acted in an arbitrary and capricious manner." Pet. Brief at 7. However, this Court has already established that Arbitrator Suskewicz's award is in fact rationally derived from the CBA. Here, the Arbitrator essentially issued two conclusions: (1) that Petitioner violated Article 7.10 of the CBA by performing work covered by the CBA without a

Job Steward present; and (2) that Petitioner violated the CBA by failing to require its subcontractor to employ Union labor for cleanup work and other covered work.  See Suskewicz Opinion at 7.  Each of these conclusions can be rationally drawn from the CBA and the testimony presented during the arbitration, including testimony by TQM's president stating that he and his wife performed tasks which should have been reserved to the Union.

  The Supreme Court has repeatedly emphasized that a court's role in reviewing an arbitration award is extremely limited.  United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567-68 (1960) (where the parties have agreed to submit to arbitration "the function of the Court is very limited . . . It is confined to ascertaining whether the party seeking arbitration is making a claim which is governed by the contract.  Whether the moving party is right or wrong is a question for the arbitration").  This Court cannot vacate an arbitration award on the basis that it would have decided the matter differently, even if it finds that award is excessive, so long as it is rationally derived from the CBA.  Roberts & Schafer Co. v. Mine Workers, Local 1846, 812 F.2d 883, 885 (3d Cir. 1987) (an arbitration award draws its essence from the CBA and "thus must be confirmed so long as that arbitrator's interpretation can in any rational way be derived from the agreement" in light of the facts).  Thus, this Court must extend great deference to an arbitrator's authority to fashion appropriate remedies to fit particular situations.

  Lastly, this Court turns to Petitioner's assertion that the Arbitrator exceeded the scope of his powers by rendering an opinion as to the enforceability of the "Building Site and General Construction Agreement" on a going forward basis.  However, Petitioner does not point to any instance in which the Arbitrator issued any ruling on a going forward basis.  Any indication that TQM is bound to the CBA going forward can only be found in Petitioner's brief.  Rather,

Arbitration Suskewicz issued only the following remedies:

1.  The employer shall pay Job Steward James E. Collins two weeks pay (80 hours) at the contractual rate he was earning including the additional $.75 Job Steward rate. Further, the Employer shall provide all fringe benefits that Collins and the Union would be entitled to as if Collins has worked those weeks.[2]

2.  The Employer shall pay Job Steward James E. Collins two days pay (16 hours) for two Saturdays at the appropriate overtime rate. Further, the Employer shall provide all fringe benefits that Collins and the Union would be entitled to as if Collins had worked those Saturdays.

Suskewicz Opinion at 8. Nowhere in these remedies does the Arbitrator say that TQM will be bound to the CBA going forward. Rather, the Arbitrator only ordered TQM to make payments to the Union as a result of the controversy arising from the Elizabeth Job, but not for any future jobs. To the extent that, in making these allegations, TQM attempts to diminish the precedential value of the Arbitrator's decision, this Court also declines to undermine that Arbitrator's findings. In light of the foregoing conclusions that the Arbitrator's award was not prejudicial, partial, or arbitrary and capricious, it is clear that vacating the Arbitration Award would run afoul of the deference required to be given to Arbitrators. As such, Petitioner's motion to vacate the Arbitration Award must be denied.

IV.   CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the Arbitration Award is denied and Respondent's cross-motion to confirm the Arbitration Award is granted. An appropriate order accompanies this Opinion.

---

[2] In a footnote, Arbitration Suskewicz wrote, "As this project lasted approximately four weeks, and it is unclear whether laborers were needed for the entire 4 week period, I find that 2 weeks presents a Solomonesque compromise." This Court finds that this compromise further undermines Petitioner's contention that the Arbitrator was biased or behaved with partiality towards the Union.

DATED: April 4. 2011

                                             /s/ Jose L. Linares
                                             JOSE L. LINARES
                                             U.S. DISTRICT JUDGE