NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
TQM CONSTRUCTION CO.,                 :
                                      :
            Petitioner,               :
    v.                                :    CIVIL ACTION NO. 11-831 (JLL)
                                      :
                                      :    OPINION
NEW JERSEY BUILDING                   :
CONSTRUCTION LABORERS DISTRICT        :
COUNCIL, LOCAL 394                    :
                                      :
            Respondent.               :
_____:

**LINARES**, District Judge.

Currently before the Court is Plaintiff's motion for reconsideration of this Court's denial of Plaintiff's motion to vacate Bernard Suskewicz's arbitration award dated December 17, 2010. The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set for below, Plaintiff's motion for reconsideration is denied.

**I.   BACKGROUND**

The facts of this case are more fully detailed in this Court's April 4, 2011 Opinion. Only those facts relevant for the present motion are included here.

In or around Summer 2010, TQM Construction Co. ("TQM") was awarded a contract by the Elizabeth Board of Education to perform general contracting work at Roosevelt School in Elizabeth, New Jersey (the "Elizabeth Job"). Brief in Support of Petitioner's Motion to Vacate And/Or Limit the Arbitration Award ("Pet. Brief") at 1. In connection with the Elizabeth Job,

TQM hired various subcontractors prior to commencing work.  Id.  On or about July 28, 2010, construction began on the Elizabeth Job.  On that date, Alfred Castagna ("Castagna") a business manager from Local 394 contacted TQM's president, Bill DeVre ("DeVre"), to see if TQM would hire union workers.  Devre informed Castagna that the Elizabeth Job was not a significant project, but that he would be willing to hire a single Local 394 worker in a limited capacity for the Elizabeth Job.  Pet. Brief at 1.

On or about July 28, 2010, DeVre executed a Short Form Agreement, which incorporated the Collective Bargaining Agreement — entitled the 2007-12 Building, Site and General Construction Agreement (the "CBA") — in full.  See Short Form Agreement at Pet. Brief, Ex. A ("The undersigned Employer and Unions hereby agree to be bound by the terms and conditions set forth in the 2007-12 Building Site and General Construction Agreement, which agreement is incorporated herein as if set forth in the full.").  Petitioner contends that DeVre only signed the agreement because Castagna represented that it was necessary to get the worker paid.  Pet. Brief at 1.  Further, Petitioner alleges that the CBA was not provided with the Short Form agreement, nor did it ever receive a copy, despite repeated requests, until this matter was submitted to arbitration.  Pet. Brief at 2.  Article 7.10(a) of the CBA provides in relevant part:

> On every job where laborers are employed by an Employer bound by this Agreement, there shall be a laborer Job Steward who shall be a member of the territorial local union where the job is located and who shall be competent in the work to be performed . . . The Job Steward Shall be the first laborer hired and the last laborer to be laid off.  No laborer shall be permitted to work without a Job Steward on the job.  The Job Steward shall not be discharged except for just cause and upon twenty-four hours prior written notice to the business manager.

See CBA, Cross- Motion to Confirm Arbitration Award and in Opposition to Plaintiff's Motion to Vacate ("Resp. Brief"), Ex. A.

James Collins ("Collins") was assigned to the Elizabeth Job by Castagna. After Collins had worked at the project for two days, on or about August 2, 2010, a dispute arose at the jobsite whereby DeVre complained about the sufficiency of Collins' work. Id. Accordingly, on or about August 3, 2010, Castagna, DeVre and Collins met at the jobsite. Id. At that time it was agreed between Castagna and DeVre that Collins' work would be limited to: (1) fixing a plastic partition; (2) cleaning concrete in the bathroom area; and (3) digging a single hole in the ground. Id. Collins worked on these tasks on August 3 and August 9, 2010. Collins was paid for a full days work on July 28, August 2, August, 3, and August 9, 2010. Id.

TQM was noticed on November 15, 2010 of arbitration of a claim alleging that Petitioner had failed to use Union labor for the remaining performance of the CBA-covered work and cleanup work at the Elizabeth Job. Resp. Brief at 3-4. A hearing was held on December 8, 2010 during which TQM was not represented by counsel. After a hearing, on December 17, 2010, Arbitrator Suskewicz issued a decision in favor of the Union.

On February 8, 2011, TQM Construction filed a petition with this Court to vacate the arbitrator's award. On March 7, 2011, Respondents filed a cross-motion to confirm the arbitration award and opposition to Petitioner's motion to vacate the arbitration award to which Petitioner filed its reply brief. On March 16, 2011, Respondent requested permission to file a surreply, which Petitioner opposed. On April 4, 2011, this Court denied Petitioner's motion to vacate the arbitration award and granted Respondent's motion to confirm the arbitration award. In its Order, this Court wrote that, "Petitioner's request to file a surreply is denied as moot." In actuality, this Order should have read "Respondent's request to file a surreply is denied as moot." This oversight was merely a typo and was not intended to imply that Petitioner's reply brief was

not filed out of right, or that the Court failed to receive Petitioner's reply brief.

**II.    LEGAL STANDARD**

"Reconsideration is an extraordinary remedy" and should be "granted 'very sparingly.'" See L.Civ.R. 7.1(I) cmt.6(d); see also Fellenz v. Lombard Investment Corp., Nos. 04-3993, 04-5768, 04-3992, 04-6105, 2005 WL 3104145, at *1 (D.N.J. Oct. 18, 2005).  A motion for reconsideration must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L.Civ.R. 7.1(I).  When the assertion is that the Court overlooked something, the Court must have overlooked "some dispositive factual or legal matter that was presented to it." McGovern v. City of Jersey, No. 98-5186, 2008 WL 58820, at *2 (D.N.J. Jan. 2, 2008).  The Court will reconsider a prior order only where a different outcome is justified by: (1) intervening change in law; (2) availability of new evidence not previously available; or a (3) need to correct a clear error of law or manifest injustice ("reconsideration elements"). N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

**III.   ANALYSIS**

Plaintiff avers that the Court either did not consider or appreciate the arguments highlighted in Petitioner's reply brief.  Brief in Support of Petitioner's Motion for Reconsideration ("Pet. Rec. Brief") at 2.  Namely, Plaintiff claims that 1) any alleged agreement between the parties is void on the ground of fraud in the execution; 2) that the August 3, 2010 Agreement of the parties operated as a novation of any previous alleged agreement; and 3) that the Union waived its right to relief before the New Jersey State Board of Mediation. Id. at 1-2. However, even when a Court does not explicitly treat and reject a particular argument in an

opinion, it does not follow that said argument was not considered. See Black v. Romano, 471 U.S. 606, 616 (1985) ("The procedures required by the Due Process Clause [] were afforded in this case, even though the [] judge did not explain on the record his consideration and rejection of alternative [arguments]."). To the contrary, the Court considered all of the arguments presented by the parties before rendering a decision, albeit an unfavorable one for Petitioner. In any event, for the purposes of clarity, the Court will specifically address the arguments raised in the instant motion.

### A. The Agreement is Void on the Grounds of Fraud in the Execution

Petitioner argues that the Union made false representations to TQM regarding the CBA and Short Form Agreement, and therefore the contract is void due to fraud in the contract's execution. Pet. Rec. Brief at 8-10. Petitioner is correct that, "fraud in the execution" occurs when a party enters into an agreement that contains markedly different terms than the agreement it believes it has entered into. Electrical Workers Local 58 Pension Trust Fund v. Gary's Electric Service Co., 227 F.3d 646, 656 (6th Cir. 2000) (internal citations omitted). To have a plausible "fraud in the execution" claim, the challenging party must demonstrate the he or she was prevented in some way from knowing or having a reasonable opportunity to know of the agreement's character or essential terms. Hetchko v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997). A party asserting a defense of "fraud in the execution" must demonstrate "excusable ignorance" of the terms of the contract. That is, Petitioner must demonstrate a legitimate reason for failing to discover the terms of the contract.

Petitioner argues that TQM was told it needed to sign the Short Form Agreement merely so that Collins could get paid, and that, despite repeated requests, the Union never provided the

CBA to TQM.  Pet. Rec. Brief at 10.  Plaintiffs maintains that there is no "more compelling case of fraud in the execution." Id.  This Court disagrees.  Rather, there was nothing preventing Petitioner, under these circumstances, from declining to sign the Short Form Agreement until it had an opportunity to review the terms of the CBA.  Petitioner's refusal to sign the contract until the full version could be provided would not have resulted in any injury to petitioner.  By its own admission, Petitioner concedes that it had not intended to hire any additional workers for the Elizabeth Job, and in fact, it was the Union who had approached them about doing so.  Pet. Brief at 4.  ("DeVre informed Castagna that the Elizabeth Job was not a significant project and that he had already had subcontractors in place for the majority of the work, but that TQM would be willing to hire a single Local 394 worker in a limited capacity for the Elizabeth Job.").  Any delay that might have resulted from demanding the full contract before entering into it would have injured Respondent, not Petitioner.  Failure to demand that the Union provide the contract before entering into it does not constitute "excusable ignorance."  To hold otherwise would allow parties to escape their contractual obligations under all types of circumstances.

      Petitioner further argues that "this very Union has a history of preying on the unsuspecting contractor." Pet. Rec. Brief at 9.  The Court takes no position on the merits of this statement other than to note that, if Petitioner believed this statement to be true, it should have exercised additional caution before entering into a contract with the Union.  Suffice to say that entering into a contract with a party bearing a reputation for committing fraud without first demanding that the full contract be provided does not constitute "excusable ignorance."  The Court declines to void a contract based on Petitioner's failure to do their due diligence.  As such, the Court finds that there was no fraud in the execution of the contract.

<u>B. The August 3, 2010 Agreement Operated as a Novation of the Previous Alleged Agreement</u>

Petitioner argues that the parties' August 3, 2010 Agreement to limit Collins' work to three specific tasks acted as a novation to the July 28, 2010 Agreement.  There is a substituted contract or novation if: 1) there is a valid former contract; 2) the parties agree to a new contract; 3) the parties form a valid new contract; and 4) the parties intend to extinguish the old contract. <u>T & N v. Pennsylvania Ins. Co.</u>, 44 F3d 174, 186 (3d Cir. 1994).   In contrast, a contract modification only alters certain portions of the contract but leaves the original agreement intact. <u>In re Barrett</u>, 417 B.R. 471 (N.D. Oh. 2009).

In this case, while it is clear there was a valid former contract, that is the only element of a novation that is present here.  There is nothing on the record to demonstrate that the parties intended to extinguish or supersede the original contract.  Neither party has represented that any of the other contract terms, beyond Collins' responsibilities, were even discussed on August 3rd, much less superseded.  In fact, during the original negotiation, the Union explicitly represented to TQM that the parties needed to effectuate the Short Form Agreement in order for Collins to get paid.  Therefore, it would be illogical for TQM to have assumed that, without additional discussions regarding payment, the August 3rd modification superseded the entire July 28th agreement.

Further, any argument that Petitioner intended that the August 3rd discussions would supersede the July 28th agreement, is wholly inconsistent with Petitioner's argument that it was not aware of the terms of the original agreement.  Petitioner could never have possessed the requisite intent to adjust the terms of the original agreement when it maintains that it was never

even aware of the terms of same.  The facts of this case repeatedly demonstrate Petitioner's failure to do their due diligence upon both entry into and modification of the contract with the Union.  Said failures should not now invalidate an otherwise valid contract.  Accordingly, this Court finds that the August 3rd discussion constitutes a modification of the contract, and not a novation.

### C. The Union Waived Its Right to Seek Relief Before the New Jersey State Board of Mediation

Petitioner maintains that the Union waived its right to arbitrate because, pursuant to the CBA, the Union never expressed its grievances to a company officer prior to seeking an administrative remedy.  However, procedural arbitrability is for the arbitrator to decide. Operating Engineers, Local 150 v. Flair Builders, 406 U.S. 487 (1972).  Abitrator Suskewicz ultimately issued a ruling on the matter; thus, it is clear that he found the claim to be properly arbitrable.  As stated in an earlier opinion, this Court must extend great deference to an arbitrator's authority to fashion appropriate remedies to fit particular situations.  An award must be confirmed so long as that arbitrator's interpretation can in any rational way be derived from the facts and agreement.  Roberts & Schafer Co. v. Mine Workers, Local 1846, 812 F.2d 883, 885 (3d Cir. 1987).

In its argument, Petitioner highlights the following language from the CBA:

**21.20 Arbitration Procedure**

(c) In the event an Employer unjustifiably fails to pay wages or fringe benefits when due, the Union has the absolute right to strike and picket the delinquent individual contractor. Economic hardship shall not be a justification for nonpayment

(d) ***All other questions or grievances*** involving the interpretation and application of this Agreement, or any grievance concerning any term or condition of work, other than trade

>jurisdictional disputes arising under Article II, ***shall be handled under the following procedures:***
>
>>**Step I**    Between the business manager of the Union or his designee and a company officer at the job site. The meeting shall be arranged as soon as practical but in no event later than seven (7) working days.
>
>>**Step II**   If the controversy is not settled pursuant to Step II [sic] either party may then submit the matter within ten (10) working days to arbitration pursuant to the rule and procedures of the New Jersey State Board of Mediation for final and binding decision. Only the Union or the Association may submit a dispute to arbitration.

Petitioner claims that this language dictated that Respondent complete "Step I" before proceeding to "Step II" in order for the matter to be arbitrable. Although the Petitioner raised this argument in its reply brief in support of its motion to vacate the arbitration award, there is no indication that petitioner raised this argument during the arbitration. As such, Arbitrator Suskewicz does not explicitly treat this argument in his arbitration award. However, as Arbitrator Suskewicz ultimately issued an opinion on the matter, it is clear that he determined that the matter was arbitrable. As such, the Court will not disturb his determination as long as there are rational bases for this decision, and in light of the language of the CBA, there are.

> This Court finds that, upon reading the CBA, there is a rational argument that parts C and D are distinct. That is, Steps I and II constitute the proper procedure for "all other grievances " as described in Part D; exclusive of the failure to pay wages and benefits, which is treated in Part C. Therefore, it was not necessary for the Union to confer with a company official prior to initiating arbitration. Such an action would only be required if their grievance was not regarding a failure to pay wages or benefits. Nor was it necessary, as Petitioner argues, for the Union to picket the job site. Part C makes clear that taking such an action was merely an option, not a

requirement. Given this reading, it is clear there was a rational basis for the Arbitrator to determine that this dispute was arbitrable. As such, the Court is not in the position to overturn the Arbitrator's determination.

IV. **CONCLUSION**

In light of the foregoing, Petitioner's motion for reconsideration is denied. An appropriate order accompanies this opinion.

DATED: June 15, 2011

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE